DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## January, 1885.

---

EMORY A. CHASE AND WILLIAM J. HUGHES, Execu
TORS OF WILLIAM DONAHUE, DECEASED, RESPONDENTS, *v.*
WILLIAM BELDEN, APPELLANT.

*Steam yachts navigating the Hudson river — what lights they should carry at night —
U. S. Revised Statutes, sec. 4233.*

A yacht called the Yosemite was licensed, under section 4214 of the United States
Revised States, as a pleasure yacht to proceed from port to port in the United
States, and by sea to any foreign ports. She was of 481 tons burden, was propelled by steam and had two high masts. She was coming up the Hudson river
under steam with her sails furled, when, between nine and ten o'clock at night,
near the Esopus light-house, she collided with and sank another vessel. It was
claimed that the Yosemite occasioned the accident by failing to carry the
proper lights.

*Held,* that the Yosemite was an "ocean-going steamer," and a "steamer carrying
sail," within the meaning of Rule 3 of the rules for navigation, prescribed by
section 4233 of the United States Revised Statutes, and should carry the lights
therein provided for.

That being "otherwise expressly provided for" she should not carry the lights
specified in Rule No. 7. (LEARNED, P. J., dissenting.)

APPEAL from a judgment in favor of the plaintiffs, entered upon
the verdict of a jury, and from an order denying a motion for a new
trial made upon the minutes of the justice before whom the action
was tried.

The plaintiffs' testator was the owner of the river steamboat Charlotte Vanderbilt, and the defendant the owner of the ocean-going steam yacht Yosemite. Between nine and ten o'clock on the night of July 14, 1882, the Vanderbilt was going down the Hudson river and the Yosemite coming up. Near the Esopus light-house the two vessels came into collision; the Yosemite striking the Vanderbilt just forward of the gangway on the starboard side, and passing through, came out about the middle of the gangway on the port side, cutting off the bow of the Vanderbilt and sinking her. The complaint charges that the collision was caused by the negligence of the defendant.

*F. L. Westbrook*, for the appellant.

*P. Cantine*, for the respondents.

LANDON, J.:

The Yosemite was licensed under section 4214, United States Revised Statutes, as a pleasure yacht, to proceed from port to port in the United States, and by sea to any foreign ports. She was of 481 tons burden, was propelled by steam, had two high masts, carried her sails furled at the time of the collision. She was painted black. She carried the bright white light at the foremast head, the green light upon her starboard side and the red light upon her port side, prescribed by Rule 3 of section 4233, United States Revised Statutes, for "ocean-going steamers and steamers carrying sail when under way." The plaintiffs claim, and the learned judge upon the trial charged the jury, that when she was navigating the Hudson river she was in fault for not carrying the lights prescribed by Rule 7 of the same section. The pilot of the Vanderbilt did not understand the significance of the lights the Yosemite carried, and because of the darkness of the night and his inability to see anything except her lights, the jury under the charge of the court attributed the sinking of the Vanderbilt to the fault of the Yosemite. If the Yosemite had the proper lights, then it was gross incompetency on the part of the pilot of the Vanderbilt not to understand them. The rules, so far as necessary to cite them, are as follows:

UNITED STATES REVISED STATUTES, CHAPTER FIVE. — NAVIGATION.

SECTION 4233. The following rules for preventing collisions on the water, shall be followed in the navigation of vessels of the navy and of the mercantile marine of the United States. :

### STEAM AND SAIL VESSELS.

RULE 1. Every steam vessel which is under sail, and not under steam, shall be considered a sail vessel.; and every steam vessel which is under steam, whether under sail or not, shall be considered a steam vessel.

### LIGHTS.

RULE 2. The lights mentioned in the following rules, and no others, shall be carried in all weathers, between sunset and sunrise :

RULE 3. All ocean-going steamers, and steamers carrying sail, shall, when under way, carry,

(*a*.) At the foremast head, a bright white light, of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least five miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of twenty points of the compass, and so fixed as to throw the light ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side.

(*b*.) On the starboard side a green light, of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least two miles, and so constructed as to show a uniform and unbroken light over an arc of the horizon of ten points of the compass, and so fixed as to throw the light from right ahead to two points abaft the beam on the starboard side.

(*c*.) On the port side a red light of such a character as to be visible on a dark night, with a clear atmosphere, at a distance of at least two miles, and so constructed as to show a uniform and unbroken light over an arc of the horizen of ten points of the compass, and so fixed as to throw the light from right ahead to two points abaft the beam on the port side.

The green and red lights shall be fitted with inboard screens, projecting at least three feet forward from the lights, so as to prevent them from being seen across the bow.

RULE 4. Steam vessels, when towing other vessels, shall carry two

bright white mast-head lights vertically, in addition to their side lights, so as to distinguish them from other steam vessels. Each of these mast-head lights shall be of the same character and construction as the mast-head lights prescribed by Rule 3.

RULE 5. All steam vessels, other than ocean-going steamers and steamers carrying sail, shall when under way carry on the starboard and port sides lights of the same character and construction, and in the same position as are prescribed for side lights by Rule 3, except in the case provided in Rule 6.

RULE 6. River steamers navigating waters flowing into the gulf of Mexico and their tributaries shall carry the following lights, namely: One red light on the outboard side of the port smoke-pipe, and one green light on the outboard side of the starboard smoke-pipe. Such lights shall show both forward and abeam on their respective sides.

RULE 7. All coasting steam vessels, and steam vessels other than ferry-boats and vessels otherwise expressly provided for, navigating the bays, lakes, rivers, or other inland waters of the United States, except those mentioned in Rule 6, shall carry the red and green lights as prescribed for ocean-going steamers; and in addition thereto a central range of two white lights; the after light being carried at an elevation of at least fifteen feet above the light at the head of the vessel. The head-light shall be so constructed as to show a good light through twenty points of the compass, namely, from right ahead to two points abaft the beam on either side of the vessel, and the after light so as to show all around the horizon. The lights for ferry-boats shall be regulated by such rules as the board of supervising inspectors of steam vessels shall prescribe.

RULE 8. Sail vessels, under way or being towed, shall carry the same lights as steam vessels under way, with the exception of the white mast-head lights, which they shall never carry.

The Yosemite was an "ocean-going steamer" and a "steamer carrying sail." (Rule 3.) She was not "under sail" but "under steam." (Rule 1.) This distinction between *under* sail and *carrying* sail, is taken by the rules cited. Such a steamer "when under way shall carry" the lights the Yosemite had. "Under way" where? The learned judge at circuit said in substance "on the ocean," and thus by the insertion of the ocean excluded the river. Rule 3

does not insert the words "on the ocean;" it does not in terms. exclude the river. All the rules seem to have been prepared with rigid exactness of expression, and therefore may safely be literally construed. Unless the fair construction of Rule 7 also includes "an ocean-going steamer" or "a steamer carrying sail" when navigating inland waters, the Yosemite properly carried the same lights on the river as on the ocean.

It is not contended that this pleasure steam yacht, designed as a "model of naval architecture" (U. S. R. S., § 4214), was technically a "coasting vessel." Rule 7 provides "steam vessels other than ferry-boats and vessels otherwise expressly provided for, navigating the bays, lakes, rivers or other inland waters * * * shall carry the red and green lights as prescribed for ocean-going steamers. and in addition thereto *a central range of two white lights*." There is no comma after "ferry-boats," and hence the words "other than" govern "vessels otherwise expressly provided for." So that the meaning is, "steam vessels other than ferry-boats and *other than* vessels otherwise expressly provided for," or to apply it to this. case, "steam vessels," not otherwise expressly provided for, navigating the Hudson river shall carry the central range of lights. The Yosemite was a vessel "otherwise expressly provided for" in Rule 3, and therefore was by Rule 7 not required to carry a central range of two white lights, and was by Rule 2 prohibited from carrying such lights.

An examination of the rules cited shows that every vessel propelled by steam, whether on the ocean or the inland waters must, when under way, between sunset and sunrise, carry the green light. on its starboard side and the red light on its port side. Even the steamers on the waters flowing into the gulf of Mexico must carry these lights, but owing no doubt to the peculiar construction of the craft in those waters, these lights are placed on the starboard and port smoke-pipes of the steamers instead of upon their sides. Sail vessels when under way must also carry these lights. Even the boats which are too small to have the green and red lights fixed upon their starboard and port sides, must have them where they may be immediately displayed thereon when approaching another vessel. The green and the red lights placed respectively on the starboard and port sides, is the general provision for all steam vessels.

.everywhere. We are compelled, therefore, further to examine the rules to find some other distinguishing feature of some of the steam vessels mentioned, in order to ascertain what steam vessels are referred to in the words of exception in Rule 7, wherein we are informed that *all* steam vessels other than vessels otherwise expressly provided for, must when navigating the rivers and inland waters .carry, in addition to the green and red lights universally required, a .central range of two white lights. Looking for something "expressly provided for," "otherwise" than the green and red lights, we find in Rule 3 that "the ocean-going steamers and the steamers carrying sail" shall carry at the foremast-head a bright white light; .and we find that no other steamer is permitted to carry such a light. We find in Rule 4 that steam vessels when towing other vessels .shall carry two bright white mast-head lights vertically. We find no other steam vessels thus provided for. We find no peculiar provision for any other steam vessels except that mentioned as to the steamers on waters flowing into the gulf of Mexico.

Finding, therefore, the ocean-going steamers and steamers carrying sail, and steam vessels when towing other vessels, thus expressly provided for, so as instantly to be known and distinguished from .all other steamers or vessels, and finding no others expressly provided for, we conclude that these steam vessels and ferry-boats, but .no others, fall within the exception created by Rule 7.

Upon the trial, the "general rules and regulations prescribed by the board of supervising inspectors of steam vessels" were read in evidence. The construction given by this board to the exception contained in Rule 7, above discussed, excludes all the steamers mentioned in the rules preceding Rule 7.. (See page 49.) Whether the construction adopted by the board, or the one adopted by us, be the true one, the Yosemite was not in fault in not carrying a central range of two white lights. These rules seem to place the sole reliance for safety of vessels in passing each other in the dark, so far as lights are concerned, upon the green and red lights. It is thus remarked on page 47: "It will appear evident that in any situation in which two vessels may approach each other in the dark, the colored lights will instantly indicate to both the relative course of each; that is, each will know whether the other is approach-.ing directly or crossing the bows, either to starboard or port. This

intimation, with the signals by whistles, as provided, is all that is required to enable vessels to pass each other in the darkest night with almost equal safety as in broad day." There is much reason to believe that if the pilot of the Vanderbilt had understood the lights and obeyed the rules, this collision would have been avoided.

The judgment should be reversed and a new trial ordered, costs to abide the event.

BOOKES, J., concurred.

LEARNED, P. J. (dissenting):

Rule 3, section 4233, Revised Statutes, United States, says: "All ocean-going steamers and steamers carrying sail shall, when under way, carry," etc., A, B, C, specifying the lights which were, in fact, on the Yosemite.

RULE 5. All steam vessels, *other than* ocean-going steamers and steamers carrying sail shall, when under way, carry," etc., specifying the side lights provided by B and C of Rule 3, "except in the case provided for by Rule 6." This exception shows that, *but for the exception,* the words " steam vessels " would have been broad enough to include the vessels mentioned in Rule 6, viz., "river steamers." Therefore, the words "steam vessels" include "river steamers," or river steamboats.

RULE 6. "River steamers navigating waters flowing into the Gulf of Mexico " shall carry certain lights.

Thus we see that these three rules provide for *all steam vessels;* that is, Rule 3 for what we may call in brief maritime steam vessels; Rule 6 for Mississippi steamers, commonly called steamboats; Rule 5 for all others. If there were no other rules, then these would provide for *all kinds of steam vessels, in all places.*

Then comes Rule 7. This mentions first, " all coasting steam vessels ; " then " steam vessels other than ferry-boats and vessels otherwise provided for, navigating the bays, lakes, etc., except those mentioned in Rule 6," and requires them to carry the red and green lights (as in B and C), and also certain lights called range lights.

Now, as Rules 3 and 5 include all steam vessels (excepting those mentioned in Rule 6), and as Rule 7 excepts those mentioned in Rule 6, it follows that Rule 7, if it applies to any vessels at all,

must apply to vessels which are included in Rule 3 or in Rule 5. That is, it must apply either to some " ocean-going steamers and steamers carrying sail," or to some vessels " other than ocean-going steamers and steamers carrying sail." Therefore we may assume that the fact that a certain steam vessel comes within the description of Rule 3, or comes within the description of Rule 5, does not prevent the application to it of Rule 7.

How then is Rule 7 to be applied if all steam vessels are already provided for? It is to be applied when a steam vessel comes into the situation mentioned in Rule 7, that is, when it is navigating inland waters of the United States. There is no remaining *class* of steam vessels not included under Rules 3, 5 and 6. Rule 7, by its express terms, does not apply to those described in Rule 6. It must, therefore, apply to those mentioned in Rule 3 or in Rule 5. And it applies to them when they come into certain circumstances, viz., *when navigating inland waters* other than the Mississippi, etc.

It is said that Rule 7 excepts "vessels otherwise provided for," and that this exception refers to the provisions of Rule 3. But if the exception refers to the provisions of Rule 3, why not to the provisions of Rule 5, which are equally express? If the exception does not apply to the provisions of Rule 3, the defendant's position is wrong. If it does, then it must equally apply to the provisions of Rule 5, and then Rule 7 is left with nothing to apply to because everything is excepted.

Again, " coasting steam vessels," must they not carry range lights when navigating inland waters? But they are provided for by Rule 5. Possibly they must carry range lights *always*. But that is not important here. If they are governed by Rule 5 when not navigating inland waters, yet, at any rate, *when* navigating inland waters Rule 7 must apply to them.

It is impossible to give to the words "unless otherwise provided for" in Rule 7 so broad a meaning as to include the vessels provided for in Rule 3 and in Rule 5; and there is no reason to include the provisions of Rule 3 and exclude those of Rule 5. The defendant's counsel urges that Rule 3 expressly provides for maritime vessels and Rule 8 for sail vessels. But he omits to observe that Rule 5 *just as expressly* provides for all steam vessels *other than* maritime and other than Mississippi steamers.

If it be asked to what do the words " otherwise expressly provided for " apply, it may be said that perhaps they are words of caution either as to present or future possible provisions. They may perhaps apply to the provisions of Rule 9, the case of small vessels in bad weather, or to the case of open ,boats mentioned in Rule 13, for such boats are sometimes driven by steam power; and notice that open boats are classed, in that Rule 13, as " vessels " by the words " other vessels." If the word " vessels " in Rule 7 includes other than steam vessels, then the words " expressly provided for " might apply to the provisions of Rule 12 and Rule 8.

The view thus given is favored by the reason of the matter. Rule 7 means to give range lights on inland waters. The reason for the need of these range lights is the *place not the character of the vessel.* Vessels are numerous in such places. Courses are to a greater extent in one or two directions. The navigator of a river accustomed to range lights ought not to be exposed to the especial danger which would arise if a steam vessel coming on a river should not carry such lights. The words are " *vessels navigating,*" that is, vessels *in the act of navigating,* not vessels which always navigate such waters, but any steam vessels, whatever their customary routes, which come into and navigate inland waters.

Again, if we read Rule 5 we shall see that it includes a Hudson river steamboat, such as the Vanderbilt was. Could the Vanderbilt neglect to carry range lights and say in excuse that she was a vessel expressly provided for by Rule 5 and, therefore, she was not bound to carry range lights although navigating inland waters? If not, why can the Yosemite make the similar excuse that she was a vessel expressly provided for by Rule 3?

Something was said in argument about the difficulty and uselessness of having range lights on a steamer carrying sail. I confess that I have not enough knowledge of such vessels to determine the meaning of the rule by that view of the matter; and indeed I hardly think that we should give much weight to such considerations unless it should be shown by proof to be impossible for a vessel like the Yosemite to carry range lights. If such range lights are obscured on such a vessel by masts or sails that would not be the fault of the owner of the vessel. It is enough for him to carry the lights prescribed by the rules. It seems to me then that Rules 3 and 5

provide for every kind of steam vessels, excepting such as are navigating the Mississippi waters provided for by Rule 6; that Rule 7 provides for such steam vessels as are navigating other inland waters and must affect steam vessels mentioned in Rules 3 and 5 when they navigate such inland waters, because otherwise there are no steam vessels to which it can apply.

There is a fact of some importance. The inspectors certificate of the Yosemite permits her to navigate " the waters of any ocean route" and says that she has signal lights. This certificate, therefore, states that she has the signal lights proper for an ocean route. It does not state that she has the signal lights proper for navigating inland waters, and the inspectors are by law directed to see that all the requirements of the law are complied with. (U. S. R. S., § 4417.) The signal lights, therefore, which she had were declared by the inspectors to be those required for steam vessels on ocean routes, not on inland waters.

Judgment reversed and new trial granted, costs to abide event.